D. H. BYRD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75830.   Promulgated May 7, 1935.

*Harry C. Weeks, Esq.,* for the petitioner.
*R. W. Wilson, Esq.,* and *R. B. Cannon, Esq.,* for the respondent.

OPINION.

TRAMMELL: This is a proceeding for the redetermination of a deficiency in income tax for the year 1931 in the amount of $9,576.56. The issues framed by the pleadings are, (a) whether respondent

erred in including in petitioner's gross income the amount of $39,-510.65 in connection with the Byrd-Owen-Sloan transaction, and (b) whether respondent erroneously disallowed a loss claimed by the petitioner in the amount of $7,095.99 arising on account of lapsed oil and gas leases. The material facts, except for those stipulated and certain documentary evidence, were alleged in the petition and admitted by the respondent in an amended answer.

The petitioner is an individual, with his principal office in Dallas, Texas.

On or about February 15, 1930, petitioner entered into a written agreement with the Owen-Sloan Oil Co., the substance of which was that the company was to advance approximately $40,000 with which to buy oil properties in Texas. The money so advanced was to be repaid, with interest, from sales of the properties, after which the petitioner was to receive certain expenses, with interest. Thereafter "all money received from the leases and royalties sold or retained by the parties" was to be divided equally between them.

Under and by virtue of the agreement mentioned the Owen-Sloan Oil Co., at or about the time of the execution of the agreement, advanced substantial sums of money to the petitioner for use in accordance with the terms thereof, and various oil and gas leases, royalty interests, and mineral interests were acquired with the funds so advanced.

The petitioner in good faith believed that the arrangement evidenced by the agreement with the oil company was terminated prior to the transactions hereinafter referred to, and in the year 1931 he and one Jack Frost, as partners or joint venturers, engaged in the business of dealing in oil and gas leases and/or mineral interests and in developing such oil properties chiefly, but not entirely, in the East Texas oil fields. From these dealings the petitioner and Frost received gross a considerable amount of money and made a substantial profit.

In arriving at the deficiency here involved the respondent has determined that the operations of the partnership or joint venture resulted in a taxable profit of $158,042.58, one half of which was taxable to the petitioner and one half to Frost.

In making his tax report for the year 1931 the petitioner reported as a part of his income the entire sum of $79,021.29, but deducted therefrom one half, or $39,510.65, for the reasons hereinafter set forth, which deduction was disallowed by the respondent in arriving at the deficiency.

On or about March 15, 1931, the petitioner and Frost had transferred to Byrd-Frost, Inc., the oil properties then owned by them jointly in connection with the venture above mentioned, and at the same time, or shortly thereafter, the Owen-Sloan Oil Co. instituted

a suit in the District Court of the United States for the Eastern District of Texas against petitioner, Frost, and Byrd-Frost, Inc., the substance of the claim being that the arrangement created by the contract hereinbefore referred to had not been terminated and that, in so acquiring the properties from which the petitioner and Frost derived the profit above mentioned, as well as the property transferred to Byrd-Frost, Inc., the petitioner was acting under and by virtue of that contract, and that the Owen-Sloan Oil Co. was entitled not only to the return of the money advanced under the contract, but to one half of the remaining profits and the properties so transferred to Byrd-Frost, Inc.

These claims were denied by the defendants in the suit, which was vigorously contested, but at the close of the year 1931 the suit had not been tried and was still pending. The suit was tried in the year 1933, and at the conclusion of the trial the court announced final judgment, in substance, that the plaintiff was not entitled to recover from Frost, or from any profits or properties received by or coming through him, but that the plaintiff was entitled to recover from petitioner to the extent of one half of the properties which came by or through him, or the profits derived by him after accounting for the advances made by the Owen-Sloan Oil Co., although no formal judgment was entered, and the amount of the recovery was not definitely fixed by the court.

Pending a hearing on the amount of the recovery and other details, the controversy was settled by an agreed payment made and to be made of $500,000 by petitioner and Byrd-Frost, Inc., approximately one half of that amount being paid when the controversy was settled, to wit, on or about October 20, 1933, and the remainder being payable in deferred payments, all of which have been paid.

In the year 1931 various oil and gas leases and royalties which had been acquired under and by virtue of the contract with Owen-Sloan Oil Co. lapsed and terminated and became worthless. These properties had been acquired in 1930 at a cost of $14,191.98.

Petitioner's actual withdrawals from the partnership or joint venture of Byrd & Frost were as follows: in 1930, $7,496.18, and in 1931, $26,230.95, or a total of $33,727.13.

The advances made by the Owen-Sloan Oil Co. to D. H. Byrd under the contract exceeded $40,000, no part of which had been repaid until the payment under the judgment in the suit in the Eastern District of Texas. At the date the properties of Byrd & Frost, the partnership or joint venture, were transferred to Byrd-Frost, Inc., the liabilities of the partnership or joint venture were approximately $20,000, which liabilities were assumed by the corporation upon the transfer of the properties.

The first error assigned by the petitioner is that the respondent erred in including in gross income the amount of $79,021.29 representing petitioner's full one-half interest in the profits of the joint venture or partnership of Byrd & Frost. In his return for the taxable year petitioner included that amount in gross income and then deducted one half thereof, or $39,510.65, with the following explanation:

Claim for one half interest in my one half of properties owned by Byrd & Frost as well as one half of my profits from this venture have been attacked by Owen-Sloan Oil Company, Inc. of Philadelphia, Penn.

Suit has been filed against me in the Federal Court for the Eastern District of Texas, seeking to recover the interest above mentioned.

It is my opinion therefore that this profit is in jeopardy and should not be taxed by the Internal Revenue Department until the case is decided.

Respondent disallowed the deduction claimed, thus including in gross income petitioner's full one-half interest in the profits of the partnership or joint venture of Byrd & Frost.

The partnership or joint venture received the profits of $158,042.58. If it were a partnership (and we are without sufficient evidence on which to base a decision whether it was or not) the petitioner's pro rata share of the profits, whether distributed or not, is taxable to him, unless he is entitled to the deduction claimed. If it were a joint venture, which is not a taxable entity, each member was a coowner of the assets and the receipt of the income by the joint venture was receipt by the coowners, *Walter S. Dickey*, 14 B. T. A. 1295, 1306, affd., 56 Fed. (2d) 917; certiorari denied, 287 U. S. 606, unless the income earned by the joint venture was to be retained for use in the business or otherwise was not subject to the demands of the members, *Wild* v. *Commissioner*, 62 Fed. (2d) 777; *Glenmore, Securities Corporation* v. *Commissioner*, 62 Fed. (2d) 780. And see *Henry C. Heinz*, 28 B. T. A. 276, 280.

Petitioner does not contend, and offered no evidence to show, that his share of the profits of the joint venture or partnership of Byrd & Frost was not available to him, and we can not therefore indulge the assumption that his share was not unqualifiedly subject to his demand. On the other hand, petitioner's affirmative contention is that his pro rata share of the profits received by Byrd & Frost should be reduced by one half on account of the claim of the Owen-Sloan Oil Co.; that the claim afterwards in a later year, being recognized in the judicial proceeding and by the petitioner in his settlement, was just as valid a claim in the taxable year; or that the Owen-Sloan Oil Co. under the contract with petitioner was either a partner or joint venturer with petitioner and was entitled from the beginning to one half of any profits earned by petitioner as a result of his activities, or one half of the profits of the Byrd & Frost venture.

The question here, then, is whether petitioner is entitled to have his tax liability determined upon the basis of one fourth of the profits in controversy, or one half of his interest therein, notwithstanding the entire amount was received by or distributable to him, subject only to the unliquidated claim which had been asserted against such portion thereof in the pending litigation. Petitioner vigorously resisted the claim, asserting his right to the whole amount of his interest in the profits, and up to the close of the taxable year, in fact until October 1933, the final result of the litigation was undetermined. Obviously, it was not then known whether petitioner's right to receive the money would ever be disturbed, or whether he would ever be required to pay over any part of it to the Owen-Sloan Oil Co.

In these circumstances, petitioner is taxable on the entire amount, notwithstanding his contingent liability to the oil company. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *Lucas* v. *North Texas Co.*, 281 U. S. 11; *Board* v. *Commissioner* (C. C. A., 6th Cir.), 51 Fed. (2d) 73, affirming in part 14 B. T. A. 374; *Vang* v. *Lewellyn* (C. C. A., 3d Cir.), 35 Fed. (2d) 283; *Highland Milk Condensing Co.* v. *Phillips* (C. C. A., 3d Cir.), 34 Fed. (2d) 777.

The rule as announced and applied in the above cited cases was summarized in *Commissioner* v. *Darnell, Inc.* (C. C. A., 6th Cir.), 60 Fed. (2d) 82, as follows:

It must be conceded that if a corporate taxpayer receives, or accrues upon its books, definitely ascertained earnings, under a claim of right and without restriction as to future disposition, it is taxable thereon even though it may still be claimed that the taxpayer was not then lawfully entitled to receive the money, and even though it may thereafter be adjudged liable to restore the whole or a part of the amount received. *North American Oil Consolidated* v. *Burnet, Commissioner*, 286 U. S. 417 * * *; *Board* v. *Commissioner*, 51 Fed. (2d) 73 * * *. Such also were the cases of *Vang* v. *Lewellyn* and *Highland Milk Condensing Co.* v. *Phillips*, supra. Income taxes are properly assessed upon the basis of annual returns * * * and if income has neither actually been received during the taxable year, nor the right to its receipt been definitely fixed during that year, as to both the existence of an obligation on the part of the payor and the amount to be paid, such income is properly to be allocated only to that year in which it was in fact received or in which the right to receipt became fixed and liquidated. This is the true and full effect of the decisions in *Lucas* v. *North Texas Co.*, supra, *Burnet* v. *Sanford & Brooks Co.*, supra; and *North American Oil Consolidated* v. *Burnet*, supra.

The same general rule applies, we think, to losses or expenses claimed as deductions.

It is unimportant that the litigation in the instant case was decided against the petitioner, or that final decree was forestalled by a compromise settlement. Cf. *J. H. Tippett, Administrator*, 25 B. T. A. 69; *C. C. Harris Oil Co.*, 13 B. T. A. 937.

The petitioner actually received, or became entitled to have distributed to him, during the taxable year the income in controversy, under a claim of right and without restriction as to disposition, subject only to an unliquidated contingent liability. On authority of the above cited decisions, respondent's action, based upon the inclusion of the full amount in gross income, is approved.

Petitioner's second assignment alleges that respondent erred in disallowing a claimed loss in the amount of $7,095.99. During the taxable year 1931 various oil and gas leases and royalties acquired under the terms of the contract between petitioner and the Owen-Sloan Oil Co. lapsed and became worthless. These properties were acquired in 1930 at a cost of $14,191.98, with funds furnished by the oil company. Petitioner claimed one half of that amount as a deduction from gross income reported in his individual return, which deduction respondent disallowed on the ground that the "entire cost was being borne by Owen-Sloan."

The contract between the Owen-Sloan Oil Co., as party of the first part, and the petitioner, as party of the second part provided among other things that the party of the first part should advance approximately $40,000 for the purchase of leases and royalties in Texas, and that:

The money so advanced only to be used in the way of actual purchase money paid for said leases and royalties and said money, with interest, shall be returned to said party of the first part from time to time as any of said leases and royalties may have been sold, until all of said advancement, with interest, has been returned to said party of the first part.

The party of the second part shall be at all expenses and furnish the money to pay such expenses. However, no office overhead shall be charged and after the first party shall have received the amount of money and interest paid to it then the said second party shall be reimbursed with interest, the actual expenses of taking up and purchasing of said leases and thereafter *all money received from the leases and royalties sold or retained* by the parties hereto shall be divided equally, one-half to the party of the first part and one-half to the party of the second part. [Italics supplied.]

Petitioner contends that this contract created a partnership. We think it is unnecessary to decide this point, but, giving full effect to the terms of the contract, it was stipulated that the advances were not repaid until the compromise settlement subsequent to the decision of the court, in connection with which settlement it must be assumed that the losses sustained were taken into consideration. It was only after the cost of the leases had been paid for that petitioner was entitled to any share in the profits. If there were sufficient earnings to overcome all losses and leave net profits, the losses now claimed had already been used to offset income. However, if there were not sufficient profits arising from the venture to repay the cost of the leases to the Owen-Sloan Oil Co., petitioner

would have no capital investment or cost as a basis on which to predicate a claim for loss. The leases were bought with money furnished by the Owen-Sloan Oil Co., not with petitioner's money, and petitioner only had an interest after the profits or income had fully paid for the leases. His interest at most was an interest in all money received from the leases and royalty sold or retained. It was the money received which was to be divided equally, not the leases themselves. Petitioner, therefore, has not shown any basis on which he might be entitled to the deduction claimed on account of the lapsed leases. Respondent's determination on this issue is approved.

*Judgment will be entered for the respondent.*