FIFTH STREET STORE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3661. Promulgated April 9, 1946.

*C. J. Milliron, Esq.*, for the petitioner.
*Arthur L. Murray, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: Petitioner's agreement with the trustee in bankruptcy to accept a transfer of the debtor's assets in discharge of its rent claim, and in addition to pay all other claims against the debtor, is urged as having called for accrual of the resulting income at the time of the arrangement, several years prior to the one now before us. But in order for a claim to be accruable, both the liability and the amount must be certain at the time or sufficiently ascertainable. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182; *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11; *Liebes & Co.* v. *Commissioner* (C. C. A., 9th Cir.), 90 Fed. (2d) 932. Although the amount of the claim is now accepted by all concerned, the contemporaneous documentary record refers to it repeatedly as unliquidated. Neither the claim nor its amount had been submitted to the referee or the court for approval. In fact, it seems to be conceded that the liability itself was doubtful until the question was set at rest by *City Bank Farmers Trust Co.* v. *Irving Trust Co.*, 299 U. S. 433, decided in 1937. We are accordingly unable to perceive that "the right to receive" any amount whatever became fixed until the year in issue when the settlement of the law and the consummation of the transaction both occurred. *Jamaica Water Supply Co.* v. *Commissioner* (C. C. A., 2d Cir.) ; 125 Fed. (2d) 512; certiorari denied, 316 U. S. 698.

Assuming that the item in dispute constituted income, which petitioner apparently concedes, and that it properly falls within the present tax year, petitioner urges further that the item is not subject to recognition for tax purposes, categorically asserting that the transaction was a tax-free reorganization under section 112. But if there was a reorganization exchange, tax-free or otherwise, it was limited to that part of the transaction in which there was a transfer of assets of the debtor in return for petitioner's payment of stock and assumption of its liabilities. Section 112 in terms deals only with sales or exchanges, section 112 (a), and speaks of "gain or loss" on such sales or exchanges in its remaining provisions. The transfer of other assets of the debtor to petitioner in payment of the debtor's obligation for rental damage was not a sale or exchange in any sense of the term. *Hale* v. *Helvering* (App. D. C.), 85 Fed. (2d) 819. It accordingly never reached the type of situation to which section 112 was designed to apply.

The lack of essential relationship between the payment of petitioner's claim and the exchange of the remaining assets for petitioner's stock seems easily discernible when we consider that the debtor was admittedly solvent. Had petitioner failed to reach an agreement with the trustee for the taking over the debtor's entire business, the payment of its claim would not have been jeopardized, and it could and doubtless would have taken place irrespective of the reorganization. Similarly, as is pointed out in the referee's report, the result would have been identical had the assets been sold to petitioner or someone else for cash and the proceeds used in turn to discharge petitioner's claim. Neither the liquidation of the rent claim nor the method by which it was accomplished was accordingly to any degree related to or dependent upon the reorganization.

Payment of petitioner's claim under the lease was ordinary income taxable to its full extent. *Hort* v. *United States*, 313 U. S. 28. It was made in property having a fair market value equivalent to the claim instead of in cash, but that does not alter the situation. *Clarkson Lindley Trust*, 42 B. T. A. 509; affd. (C. C. A., 8th Cir.), 120 Fed. (2d) 998; *Pembroke* v. *Helvering* (App. D C.), 70 Fed. (2d) 850; see *San Carlos Milling Co.*, 24 B. T. A. 1132; affd. (C. C. A., 9th Cir.), 63 Fed. (2d) 153. And its recognition as a taxable event would be totally unaffected by the existence of a simultaneous tax-free reorganization. *Fifth Avenue Bank of New York, Executor*, 31 B. T. A. 945, 953; affd. (C. C. A., 3d Cir.), 84 Fed. (2d) 787. The result is that without determining whether the exchange of stock for assets was a reorganization and, if so, whether it was tax-free, we conclude that petitioner received taxable income in the year 1937 in the full amount of the agreed figure of $427,236.77, constituting the collected claim against its lessee for rental damage.

There remains the question of petitioner's basis for the property acquired. Respondent concedes that the determination of the first issue entitles petitioner to have the amount of the rent claim added to the fair market value of its stock and the assumption of the debtor's liabilities in computing its cost. It is not apparent that petitioner contends otherwise, except that it claims to be entitled to its transferor's basis for some of the assets acquired where that is higher than cost, under the provisions of section 270 of the Chandler Act.[1] This provision applies to reorganizations where the taxpayer or its predecessor achieved, by means of the reorganization, a debt reduction for which it would ordinarily be taxable. In such a situation, the carryover basis of the transferor is to be reduced by the amount of the indebtedness canceled. But in order to prevent too drastic reductions, the provision limits the decrease in basis to fair market value at the time of acquisition.

Section 270, however, contains no language "requiring an *increase* of basis * * * because of a reduction or cancellation of indebtedness, and we are confident that Congress did not intend such an increase to result from the statute before us." *Warren Balderston Co.*, 4 T. C. 764. It is apparent that the present situation would not be appropriate for the application of section 270, even though it be assumed, for purposes of argument only, that there was a cancellation of indebtedness involved in the circumstances before us. No attempt is being made to reduce petitioner's basis on account of any such cancellation and hence no occasion arises for application of the limitation in section 270 which would prevent reduction on that basis. It follows that the only alternatives are to adopt the transferor's basis or cost. Since respondent contends that cost is the proper basis and it appears from figures submitted by petitioner in its petition and on brief that the transferor's basis would be substantially lower, no reason appears for committing petitioner to the lower figures in the face of respondent's acceptance of the higher ones. We conclude that basis may be determined by ascertaining the cost of the assets at the time petitioner acquired them. Sec. 113 (a).

The amount of this calls for a brief discussion. There is no dispute between the parties as to the figures for the rent claim or for the debtor's obligations which petitioner assumed. As to the valuation of the stock, however, on the strength of which petitioner's total cost

---

[1] SEC. 270. In determining the basis of property for any purposes of any law of the United States or of a State imposing a tax upon income, the basis of the debtor's property (other than money) or of such property (other than money) as is transferred to any person required to use the debtor's basis in whole or in part shall be decreased by an amount equal to the amount by which the indebtedness of the debtor, not including accrued interest unpaid and not resulting in a tax benefit on any income tax return, has been canceled or reduced in a proceeding under this chapter, but the basis of any particular property shall not be decreased to an amount less than the fair market value of such property as of the date of entry of the order confirming the plan. * * *

must be computed, the parties are somewhat apart. We think petitioner is correct in contending that, since the stock it gave represents not only the assets already in its possession but those it was about to acquire by the transfer of the stock itself, the fair market value of the transferred assets should be included in arriving at the value of the stock. See *Amerex Holding Corporation*, 37 B. T. A. 1169; affd. (C. C. A., 2d Cir.), 117 Fed. (2d) 1009; certiorari denied, 314 U. S. 620. Neither party suggests the use of figures other than book value of assets and it is by use of this figure that we have arrived at the valuation set forth in our findings of fact for the stock issued by petitioner and for the consequent total consideration paid by it for all of the assets. We do not understand that there will be any difficulty in the application of the total figures for the purpose of computing petitioner's basis for the individual assets involved.

*Decision will be entered under Rule 50.*