IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CITY OF SEATTLE, Director of the Department of Finance and Administrative Services,<br><br>　　　　　　　　Appellant,<br><br>　　v.<br><br>T-MOBILE WEST CORP.,<br><br>　　　　　　　　Respondent. | No. 75423-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: May 22, 2017 |

BECKER, J. — The subject of this appeal is municipal taxation of roaming charges. For purposes of this appeal, roaming charges are charges for mobile telephone communications that originate in a foreign jurisdiction. The issue is whether appellant city of Seattle may levy a utility tax based on revenue received by respondent T-Mobile West Corp. from Seattle customers who incur roaming charges. The city hearing examiner and the superior court correctly refused to allow the tax. Because the roaming charges are not for intrastate telephone services, they are beyond the scope of the taxing authority the legislature has granted to the city.

A city audit revealed that T-Mobile West did not pay taxes on income derived from roaming charges during two time periods between 2006 and 2014.

The monthly service charge covered wireless communications throughout the United States. Roaming charges, as defined during the periods covered by the audit, were extra charges imposed by T-Mobile West on customers who used their cell phones while in a foreign country. For example, a T-Mobile West customer who called home while traveling in Canada would pay a roaming charge.

The city issued assessments requiring that T-Mobile pay $497,963 in back taxes based on roaming charge revenue. T-Mobile appealed the assessments to a city hearing examiner. The hearing examiner determined that the city code did not authorize taxation of roaming charges. The code authorizes the city to tax "all charges by the provider of cellular or cellular mobile telephone services provided to its customers in any taxing jurisdiction (intrastate or interstate), which are billed to a 'place of primary use' located in Seattle." SEATTLE MUNICIPAL CODE 5.48.050(A). The hearing examiner reversed the assessments on the basis that T-Mobile's international services are neither intrastate nor interstate.

The city obtained a writ of review in King County Superior Court as permitted by RCW 7.16.040. The court affirmed the hearing examiner's decision to reverse the assessments but for a different reason. The court's reasoning was based on a state statute, RCW 35.21.714, not on the city code. The city appeals and argues that both the hearing examiner and the superior court misconstrued applicable law.

In this writ proceeding, we review the hearing examiner's decision. Getty Images (Seattle), Inc. v. City of Seattle, 163 Wn. App. 590, 599, 260 P.3d 926

2

(2011), review denied, 173 Wn.2d 1014 (2012). Because neither party disputes the facts found by the hearing examiner, they are verities on appeal. Getty Images, 163 Wn. App. at 599. We are asked to review only the conclusion that the city lacked authority to tax roaming charge revenue. The question is whether this conclusion is contrary to law. RCW 7.16.120(3); Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wn.2d 22, 29, 891 P.2d 29 (1995). Because the legal conclusion involves statutory interpretation, our review is de novo. Qwest Corp. v. City of Bellevue, 161 Wn.2d 353, 358, 166 P.3d 667 (2007).

Municipalities must have express legislative authority to levy taxes. King County v. City of Algona, 101 Wn.2d 789, 791, 681 P.2d 1281 (1984); Vonage Am., Inc. v. City of Seattle, 152 Wn. App. 12, 20, 216 P.3d 1029 (2009). The city contends the legislature's grant of authority is found in RCW 35.22.280(32). That statute authorizes cities of the first class "to grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor." It authorized a Seattle ordinance enacted in 1932 to tax business activities, including the telephone business. Pac. Tel. & Tel. Co. v. City of Seattle, 172 Wash. 649, 651, 21 P.2d 721 (1933), aff'd, 291 U.S. 300, 54 S. Ct. 383, 78 L. Ed. 810 (1934). In the absence of restriction, the statute is a comprehensive grant of power to impose license taxes either for the purpose of regulation or revenue. Pac. Tel. & Tel. Co., 172 Wash. at 653.

A more recent statute, RCW 35.21.714, imposes a restriction. It was first enacted in 1981 as a general grant of authority to tax "the business activity of

3

engaging in the telephone business." LAWS OF 1981, ch. 144, § 10. Two years later, an amendment inserted the word "intrastate" as a limitation. LAWS OF 1983, 2d Ex. Sess., ch. 3, § 37. Since then, the first clause of the statute (before the proviso) has stated that when a city taxes the telephone business, it is limited to taxing revenue "derived from intrastate toll telephone services." The statute provides as follows:

> Any city which imposes a license fee or tax upon the business activity of engaging in the telephone business which is measured by gross receipts or gross income may impose the fee or tax, if it desires, on one hundred percent of the total gross revenue derived from *intrastate* toll telephone services subject to the fee or tax: PROVIDED, That the city shall not impose the fee or tax on that portion of network telephone service which represents charges to another telecommunications company, as defined in RCW 80.04.010, for connecting fees, switching charges, or carrier access charges relating to intrastate toll telephone services, or for access to, or charges for, interstate services, or charges for network telephone service that is purchased for the purpose of resale, or charges for mobile telecommunications services provided to customers whose place of primary use is not within the city.

RCW 35.21.714(1) (emphasis added).

The parties agree that "toll" services are services that incur a fee. Intrastate means services, traffic, or facilities that originate and terminate within the same state. Qwest Corp., 161 Wn.2d at 357 n.6. The roaming charges at issue here provide revenue derived from toll telephone services, but the telephone services are not intrastate. They are international.

The city argues that because RCW 35.21.714 does not say that cities can tax *only* intrastate toll telephone services, it should not be interpreted to have that effect. To give the first clause of the statute that construction makes the proviso superfluous, the city argues, because none of the charges listed in the proviso

4

are intrastate toll services. This is a strained argument. A statutory proviso does not have to state an exception to the clause that precedes it. The most natural reading is that the proviso explains how the first clause operates in particular circumstances. For example, the proviso clarifies that a city may not tax charges for services that are part of an interstate communication network even when the actual use of the network is for communications within the state of Washington. Qwest, 161 Wn.2d at 359-61. Another part of the proviso bars taxation of "charges for mobile telecommunications services provided to customers whose place of primary use is not within the city." RCW 35.21.714(1). In other words, if a Bellevue resident was in Seattle and used her T-Mobile West cellular service to call someone in Bellevue, this would constitute an intrastate communication, but Seattle could not tax it because the customer's place of primary use would not be within Seattle. Because the proviso illuminates the meaning of the first clause, it is not superfluous.

The city's attempt to tax a telephone service that is not an intrastate toll service is inconsistent with Vonage. There, the city sought to tax revenue derived from Vonage's provision of a service referred to as Voice over Internet Protocol (VoIP). Vonage, 152 Wn. App. at 15. We explained that under RCW 35.21.714, "cities have the option of taxing the intrastate component" of telephone services, and we held that "Vonage is subject to the City's telephone utility tax but the assessment must be based on the intrastate component of Vonage's service." Vonage, 152 Wn. App. at 24 (emphasis added).

5

The city argues that the assessments should be upheld because its taxing method is authorized by a federal statute effective in 2002, the Mobile Telecommunications Sourcing Act. The federal statute creates a system whereby mobile telecommunications services may be taxed based on a customer's "place of primary use":

> All charges for mobile telecommunications services that are deemed to be provided by the customer's home service provider under sections 116 through 126 of this title are authorized to be subjected to tax, charge, or fee by the taxing jurisdictions whose territorial limits encompass the customer's place of primary use, regardless of where the mobile telecommunication services originate, terminate, or pass through, and no other taxing jurisdiction may impose taxes, charges, or fees on charges for such mobile telecommunications services.

4 U.S.C. § 117(b). The city praises the regulatory regime created by the federal statute as a simpler, more efficient taxation system that does away with the complex task of determining the origin and destination of individual transmissions. The city's ordinance complies with the federal directive by taxing all of T-Mobile's services that are provided to customers whose place of primary use is within Seattle.

But it is not enough that the city's method of taxation by place of primary use is authorized by the federal statute. The federal statute does not "provide authority to a taxing jurisdiction to impose a tax, charge, or fee that the laws of such jurisdiction do not authorize such jurisdiction to impose," and it does not modify, impair, or supersede any law of any taxing jurisdiction pertaining to taxation except as expressly provided in the act. 4 U.S.C. § 118. Thus, while the federal statute authorizes the *method of* taxing by place of primary use, it does

6

not authorize the *imposition of* a tax on roaming charges. A municipal corporation's authority to tax must be delegated by the state legislature. Vonage, 152 Wn. App. at 20. Implementing legislation is necessary.

In response to the federal statute, our legislature amended RCW 35.21.714 in 2002 by adding the proviso stating that cities may not tax "charges for mobile telecommunications services provided to customers whose place of primary use is not within the city." LAWS OF 2002, ch. 67, § 9. But the legislature did not delete the term "intrastate," which we later construed in Vonage as limiting taxation to intrastate services. The fact that the legislature has prohibited the city from taxing mobile telecommunications services provided to customers whose place of primary use is *outside* the city does not mean that the legislature has expressly permitted the city to tax all mobile telecommunications services provided to customers whose place of primary use is *inside* the city.

Because the roaming charges at issue here involve communications originating in a foreign country, they are not intrastate. Following Vonage, we conclude the legislature has not delegated to the city the authority to tax revenue derived from the roaming charges. We do not address the hearing examiner's conclusion that the taxation is unauthorized by Seattle's own ordinance. We affirm the hearing examiner's conclusion that the city lacked authority to tax roaming charge revenue, but like the superior court, we base that conclusion on the absence of specific statutory authority.

No. 75423-8-I/8

The hearing examiner's decision reversing the assessments against

T- Mobile West is affirmed.

Becker, J.

WE CONCUR:

Mann, J.                    Verellen, J.

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 MAY 22  AM 11:40

8